■ JULIE McMahon, Respondent, v JOHN McMahon, Appellant. [718 NYS2d 353] —Order, Supreme Court, New York County (Joan Lobis, J.), entered on or about January 24, 2000, which, *inter alia*, denied defendant-husband's motion to vacate the plaintiff-wife's notice of discontinuance of the action, unanimously affirmed, without costs.

The wife commenced an action for divorce by service on the husband of a summons, but no complaint, on April 1, 1998. Although the husband acknowledged service of the summons, and served a Notice of Appearance directing that a copy of all papers be served on his attorneys, he never demanded a complaint, nor did he serve an answer, intending to negotiate the financial aspects of the divorce prior to the service of the pleadings and their allegations of fault, the resulting acrimony of which could interfere with a financial settlement.

The parties started discovery and on August 18 attended a scheduled preliminary conference. In the meantime, on August 11, 1998, a New York Times article indicated that Goldman Sachs had voted to take the firm public. The husband has been employed as a trader at Goldman since 1982 and his financial status likely will be a prominent feature of any financial settlement. By letter dated August 12, 1998, the wife's attorney wrote to the husband's attorney staking a claim to a portion of whatever benefits the husband gained as a result of the public offering. By letter dated August 13, 1998, the husband's attorney responded, indicating that any plans for a public offering were not certain and, even if eventually realized, any disbursement would take place long after the commencement date of the divorce action and, as such, would be outside the scope of equitable distribution. At the August 18 preliminary conference, the parties stipulated that maintenance and child custody issues had been resolved and established a discovery schedule. Net worth statements were exchanged and at some

point thereafter the wife served a first set of interrogatories. In November 1998, each party served the other party with a notice of discovery and inspection. On November 19, 1998, the wife served the husband and Goldman Sachs with Notices to Take Deposition Upon Oral Examination. The notice to the employer demanded production of several documents. Both husband and wife were deposed. On January 21, 1999, the husband produced demanded documents in response to the wife's discovery notice. In February 1999, the husband served a subpoena, a document demand and a Notice to Take Deposition Upon Oral Examination of his wife's stockbroker. This deposition took place on March 18, 1999. Clearly, the parties were not lagging in moving forward on the divorce action but still no complaint had been served. On May 7, 1999, Goldman Sachs made an Initial Public Offering (IPO) to take the firm from a private partnership to public ownership. The husband's shares of stock and his stock options appreciated considerably, apparently to the amount of some $30 million. Discovery continued and a trial date of September 21, 1999 was tentatively scheduled. In September, the wife served Goldman Sachs with an additional Notice to Take Deposition, now calling for the production of records regarding the IPO. When the initial trial date passed, the parties entered a so-ordered stipulation in court on October 7, 1999 that established limits to the scope of depositions, terminated discovery as of January 31, 2000, scheduled a pre-trial conference for February 3, 2000, blocked out trial dates for March 6-8, 2000, and provided that there would be no further adjournments of trial. A settlement conference was initially scheduled for October 26, 1999, but, at the wife's request, was adjourned to November 3, 1999. By motion dated October 28, 1999, the husband sought a protective order barring production of evidence by Goldman Sachs regarding the IPO, arguing that the year that had elapsed since commencement of the divorce action made the husband's financial interest in the IPO separate rather than marital property.

On October 29, 1999, the wife served a notice of discontinuance of the action. The issue for our review is whether the wife could effectively discontinue the action, notwithstanding the substantial discovery and even the scheduling of trial dates, and thus, as a practical matter, retain a marital interest in the benefits accruing to the husband from the IPO.

The husband moved by order to show cause for an order vacating the notice of discontinuance and equitably estopping plaintiff from discontinuing the divorce action she had commenced. Finding that the wife had an absolute statutory right

to discontinue the action, the court denied the husband's motion. We agree.

The wife's discontinuance in this case was accomplished on notice under CPLR 3217 (a) (1), requiring, and indeed allowing for, no further court intervention. CPLR 3217 (a) (1) states that: "[a]ny party asserting a claim may discontinue it without an order * * * by serving upon all parties to the action a notice of discontinuance at any time before a responsive pleading is served or within twenty days after service of the pleading asserting the claim, whichever is earlier, and filing the notice with proof of service with the clerk of the court."

The relevant pleading that, if served, narrows the plaintiff's options to the other provisions of CPLR 3217, is the complaint rather than the summons. As we have stated elsewhere in yet another matrimonial action, service of a summons with notice, without service of the complaint, is not a pleading for purposes of the section (*Giambrone v Giambrone*, 140 AD2d 206; *see also*, 7 Weinstein-Korn-Miller, NY Civ Prac, ¶ 3217.02, at 32-410—32-411 [Lexis Pub 2000]). The dispositive factor in this case is that the complaint was never served. Hence the wife retained the "absolute and unconditional" statutory right to discontinue the action on notice (*Battaglia v Battaglia*, 90 AD2d 930, 933 [Levine, J., dissenting], *revd on dissenting mem* 59 NY2d 778). When no complaint or answer has been served, "plaintiff [is] within her rights to discontinue that action by notice" (*Broder v Broder*, 59 NY2d 858, 859). When a trial court refused to acknowledge a plaintiff's right to discontinue the action under CPLR 3217 (a) (1) on the basis of "fundamental unfairness," we found that the plaintiff thereby was "deprived * * * of a procedural and statutory remedy to which he was unconditionally entitled" (*Giambrone v Giambrone*, 140 AD2d 206, 207; *accord, Newman v Newman*, 245 AD2d 353). Even if the husband had demanded a complaint, that factor would not abridge the wife's statutory right to a voluntary discontinuance by notice (*Newman, supra*).

The husband's contention that we should estop his wife from exercising such a right is unavailing under these circumstances. Court of Appeals case law is less than clear on whether estoppel may apply to bar one's exercise of CPLR 3217 (a) (1) rights, a point we have previously made (*Giambrone, supra*). Even Justice Levine's dissent in the Appellate Division's *Battaglia* case (90 AD2d 930, 934, *supra*), on which basis the Court of Appeals reversed, declined to apply equitable estoppel, since "[t]he delay in pleading * * * was as much defendant's doing as plaintiff's, and not the result of any devious or

unfair conduct which might constitute grounds for any equitable estoppel." In *Giambrone,* we cautioned that "clearly, if the right of a party under CPLR 3217 (a) (1) to discontinue an action without court order is to have any substance, and is to be distinguishable from a CPLR 3217 (b) application, a court's power to invoke equitable jurisdiction to vacate a notice must be limited to instances when the conduct is particularly egregious and amounts to more than just an altering of the respective rights of the parties" (at 207). Hence we reversed in *Giambrone* to allow the discontinuance even in the face of concerns by the IAS Court that the discontinuance would cause economic hardship for the defendant spouse. Rather, those facts "simply [did] not rise to the level of deviousness, trickery, or fundamentally unfair conduct such as could justify depriving plaintiff of a procedural remedy to which he is statutorily entitled" (*Giambrone, id.,* at 209; *accord, Cohen v Cohen,* 209 AD2d 329). The present proofs offered to show ulterior motive and even trickery simply do not reach such a level, and there is no present basis to dilute the standard to which we have consistently adhered. Moreover, the omission in service was as much for the husband's convenience as the wife's, and he had an adequate opportunity to demand a complaint. Even as we recognize the practical benefits of deferring service of the pleadings in many matrimonial cases, nevertheless, that is but one factor to be evaluated among others by the parties as they chart their own course. Having participated in the charting of this course, the husband cannot now complain of outrageous trickery.

For similar reasons, the additional equitable relief sought by the husband must be denied. The mere exercise of a procedural right by the wife, not requiring any court action, does not under these circumstances warrant the intercession of a court's equitable jurisdiction to impose obligations not provided for in the statute. Concur—Tom, J. P., Ellerin, Wallach, Rubin and Saxe, JJ.